UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
CLASSIE DORSEY,

                      Plaintiff,

        - against -

VINCENT F. GANNON, JAMES P.
O'NEILL, and THE CITY OF NEW YORK,

                      Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-1525 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

Plaintiff Classie Dorsey ("Dorsey") brings this action against Defendants Vincent F. Gannon and James P. O'Neill of the New York City Police Department ("NYPD"), as well as the City of New York, alleging violations of 42 U.S.C. § 1983 and state law in connection with her May 29, 2018 arrest and subsequent prosecution. Before the Court is Defendants' motion for summary judgment. For the reasons stated below, Defendants' motion is granted in full, and this case is dismissed.

## BACKGROUND

**I.    Relevant Facts**[1]

In November 2017, the NYPD received multiple complaints about a woman allegedly using fake Pennsylvania driver's licenses to cash (or to attempt to cash) forged checks at TD Bank locations in Staten Island, Brooklyn, and New Jersey. (Defs.' 56.1, Dkt. 30-1, ¶ 1.) Only two such

---

[1] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement or Plaintiffs' 56.1 Counterstatement, denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendants' 56.1 Statement or Plaintiffs' 56.1 Counterstatement incorporate by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

incidents are relevant to the instant motion. First, on November 8, 2017, a woman using a fake Pennsylvania driver's license bearing the name Janet Tenore cashed a forged check in the amount of $2,400 from Ms. Tenore's account. (Dkt. 31-9, at 1[2].) Second, on November 14, 2017, the same woman, this time using a fake Pennsylvania driver's license bearing the name Cheryle Levine, attempted to cash a forged check in the amount of $4,100 from Ms. Levine's account. (Dkt. 30-4, at 3.) Defendant Gannon, an NYPD detective, was assigned to investigate the complaints. (Defs.' 56.1, Dkt. 30-1, ¶ 2.)

On April 24, 2018, Detective Gannon obtained surveillance footage from the November 8, 2017 incident. Using a still image from the surveillance video and a photograph of the fake Tenore driver's license, Detective Gannon issued a nationwide CrimeDex alert seeking information about the suspect. (Defs.' 56.1, Dkt. 30-1, ¶ 4; *see also* Dkt. 30-8 (copy of CrimeDex alert).) That same day, Detective Michael Henricks of the East Norriton Township Police Department in Pennsylvania responded to Detective Gannon's alert. (Dkt. 30-9, at 4.) Detective Henricks requested a "better copy" of the fake Tenore license (used in the November 8, 2017 incident) and offered to research the identification number on the fake driver's licenses because he "would imagine she has [Pennsylvania] arrests, hence her using a PA license and working up there." (*Id.* at 3.) Detective Gannon provided Detective Henricks with a color copy of the fake Levine license (used in the November 14, 2017 incident), stating that "the exact same picture [was] used in both fraudulent licenses." (*Id.*)

On April 25, 2018, Henricks responded that the identification numbers on the fake licenses "came back to . . . neighboring departments" to East Norriton. (*Id.* at 1.) He also attached a

---

[2] Except for deposition transcripts, page numbers refer to the pagination generated by the court's CM/ECF docketing system, and not the document's internal pagination.

photograph and pedigree information for Plaintiff Dorsey, stating, "I am pretty sure this is your girl, surprisingly, her criminal history is loaded with thefts." (*Id.* (attaching "Dorsey.jpg"); *see also* Dkt. 30-10 (photo).)  Detective Gannon then searched Plaintiff in an NYPD database using the information provided by Detective Henricks, obtained additional photographs of Plaintiff, and made the determination that Plaintiff was the individual depicted in the surveillance footage. (Defs.' 56.1, Dkt. 30-1, ¶ 6.)  Detective Gannon also conferred with Detective Henricks, as well as Plaintiff's probation officer in Pennsylvania[3], and they each determined that Plaintiff was the individual depicted in the surveillance video. (*Id.*)

On May 29, 2018, Plaintiff was arrested by NYPD officers, in connection with both the November 8 and 14, 2017 incidents, and was charged with: (1) Grand Larceny in the 4th Degree; (2) Possession of a Forged Instrument in the 2nd Degree; (3) Identity Theft in the 2nd Degree; (4) Criminal Impersonation in the 2nd Degree; and (5) Unlawful Possession of Personal Identification in the 3rd Degree. (*Id.* ¶ 8.)  On September 10, 2019, the charges were dismissed by the Queens County District Attorney's Office because cell site data "show[ed] that [Plaintiff's] phone was in Pennsylvania during the above incident," an alibi witness provided paystubs showing that Plaintiff was working in Pennsylvania on the days of both incidents, Plaintiff passed a polygraph, and the video surveillance failed to establish "conclusively that it is in fact the defendant" who committed the charged offenses. (Dkt. 30-12.)

## II.     Procedural History

Plaintiff filed her complaint in this matter on March 23, 2020, asserting claims for false arrest, malicious prosecution, equal protection, and *Monell* liability pursuant to 42 U.S.C. § 1983,

---

[3] At the time of the investigation and arrest, Plaintiff was on probation for an unrelated drug offense. (Dkt. 30-12.)  The parties do not provide the Pennsylvania probation officer's name.

3

and false arrest and malicious prosecution claims under New York law, all based on her May 29, 2018 arrest. (*See generally* Complaint, Dkt. 1-1.) Defendants' motion for summary judgment was fully briefed on January 31, 2022. (Dkts. 30, 31, 32.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248). "To present a 'genuine' issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact . . . " *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019) (citations and quotations omitted). Once this burden is met, the burden shifts to the nonmoving party to proffer some evidence establishing the existence of a question of material fact that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably

4

find for the [non-movant]." *Anderson*, 477 U.S. at 252; *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013). That is, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis added and internal quotation marks omitted); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007).

"[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . . " *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021). It must "consider the record in the light most favorable to the non-movant" and "resolve all ambiguities and draw all factual inferences in favor of the non-movant 'if there is a "genuine" dispute as to those facts.'" *Loreley*, 13 F.4th at 259 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "[T]he district court may not properly consider the record in piecemeal fashion; rather, it must 'review all of the evidence in the record.'" *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

**DISCUSSION**

**I.     False Arrest Claim**

To prove a claim of false arrest, a plaintiff must show that "1) the officer intended to confine the plaintiff; 2) the plaintiff was conscious of the confinement and did not consent to it; and 3) the confinement was not otherwise privileged . . . that is, whether he had probable cause to arrest[.]" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) (citations and quotations omitted). Probable cause "is a complete defense to a constitutional claim of false arrest," *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014), and exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested," *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (citations omitted). Officers may rely on hearsay to

5

establish probable cause, and a court "may properly consider such hearsay" at summary judgment. *Martinez v. City of New York*, 564 F. Supp. 3d 88, 99 (E.D.N.Y. 2021).

On the undisputed facts here, Detective Gannon had probable cause to arrest Plaintiff. Not only did Detective Gannon conclude that Plaintiff was the individual depicted in the surveillance footage, but Plaintiff's own probation officer and Detective Henricks also identified her as the suspect. (Defs.' 56.1, Dkt. 30-1, ¶ 7; *see also* Deposition of Vincent Gannon, Dkt. 31-6, at 23 ("[A]ll three of us concurred that it was a hundred percent her in the video.").) When assessing probable cause to arrest, police officers are "entitled to rely—as long as such reliance is reasonable—on information provided by other law enforcement officials, including identifications which may later turn out to be mistaken." *Hewitt v. City of New York*, No. 09-CV-214, 2012 WL 4503277, at *4 (E.D.N.Y. Sept. 28, 2012), *aff'd*, 544 F. App'x 24 (2d Cir. 2013).

While Plaintiff disputes the accuracy of the officers' identification, she does not dispute that Detective Gannon, Detective Henricks, and Plaintiff's probation officer did in fact identify her as the suspect in the surveillance video. Rather, Plaintiff asks the Court to disregard Detective Gannon's deposition testimony that he "conferred with Detective Henricks and plaintiff's probation officer, and they each determined that plaintiff was the individual depicted in the surveillance video" as inadmissible hearsay. (Plaintiff's Brief ("Pl. Br."), Dkt. 31-2, at 11.) This argument must be rejected as matter of law; there is "clear authority" in the Second Circuit "allowing the use of hearsay to establish probable cause." *United States v. Parcel of Prop.*, 337 F.3d 225, 236 (2d Cir. 2003); *see also Tuccio v. Papstein*, 307 F. App'x 545, 547 (2d Cir. 2009) ("When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it.") (citation omitted).

6

Plaintiff next argues that "no reasonable person would have relied solely on surveillance photographs, purported mugshots, and a fake ID which did not bear Plaintiff's name to arrest Plaintiff" and, instead, would have "elicit[ed] a physical description from any of the [bank] [t]ellers that came into contact with the perpetrator, show[ed] them Plaintiff's photograph, present[ed] a photo array of suspects . . . or conduct[ed] a lineup." (Pl. Br., Dkt. 31-2, at 19.)  This argument is inconsistent with both the facts of this case and the law of the Circuit.  Detective Gannon did not rely "solely on surveillance photographs, purported mugshots, and a fake ID"; rather, he also relied on information provided by other law enforcement officials (Defs.' 56.1, Dkt. 30-1, ¶¶ 6-7), which he is reasonably entitled to do in establishing probable cause. *See Goodloe v. City of New York*, No. 12-CV-3018 (AMD) (VMS), 2017 WL 11683339, at *9 (E.D.N.Y. Mar. 24, 2017).  Moreover, once Detective Gannon had a reasonable basis on which to make an arrest, he was "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Plaintiff's final argument contesting probable cause borders on frivolous.  Without any citation to the record, Plaintiff asserts that the initial photograph provided by Detective Henricks to Detective Gannon was "clearly a faked photograph of the actual suspect wearing the same clothing, not Plaintiff."  (Pl. Br., Dkt. 31-2, at 11, 19.)  In other words, Plaintiff argues that Detective Henricks (somehow) secured a high-resolution photograph of the "real" suspect (despite, among other things, not having access to the surveillance footage) and then passed it off to Detective Gannon as a photograph of Plaintiff "to support Detective Gannon's groundless arrest of [Plaintiff]." (*Id.* at 19.)  Such "speculation and conclusory assertions"—made without even a scintilla of evidence—cannot defeat a motion for summary judgment. *Nguedi v. Fed. Rsrv. Bank of New York*, 813 F. App'x 616, 617 (2d Cir. 2020).

7

Under the circumstances presented here, "a competent police officer could believe it was objectively reasonable to arrest [P]laintiff for the [crimes] that had been committed," *Ricciuti*, 124 F.3d at 128, and, therefore, Defendants' motion for summary judgment is granted as to Plaintiff's false arrest claim.

## II.     Malicious Prosecution Claim

To prove a claim for malicious prosecution, a plaintiff must establish "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010). As the existence of probable cause "is a complete defense to a claim of malicious prosecution," Plaintiff's claim is dismissed for the reasons stated above. *Id.* at 161–62.

## III.    Equal Protection Claim

To state a claim for a violation of her right to equal protection, Plaintiff must demonstrate that she was "(1) treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citation and internal quotation marks omitted). Plaintiff has failed to do so here, as her allegation of racial bias is impermissibly conclusory. She states that Detective Gannon's investigation "consisted of locating any African-American woman residing in Pennsylvania[] who remotely resembled the person depicted in bank surveillance videos" and that Detective Gannon "made her a patsy and scapegoat on account of her race." (Pl.'s Br., Dkt. 31-2, at 26–27.) It is well-settled that "without additional evidentiary support—such as comments reflecting racial bias, or a pattern of one race

8

being treated differently than another—such conclusory allegations cannot raise a triable issue as to racial bias to support an equal protection claim." *Brown v. Caraballo*, No. 19-CV-9048, 2022 WL 4087906 (VB), at *5 (S.D.N.Y. Sept. 6, 2022). The record contains no such evidentiary support of racial bias; rather, Plaintiff's own probation officer and Henricks also identified her as the woman in the bank surveillance video. Therefore, Defendants' motion for summary judgment as to Plaintiff's equal protection claim is granted.

### IV. *Monell* Liability

Plaintiff alleges that the City of New York and Defendant O'Neill, in his official capacity as NYPD Commissioner ("Municipal Defendants"), caused her alleged constitutional deprivations through the NYPD's policies, customs, and practices. To establish liability under *Monell*, a plaintiff must show that he "suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019). Where a plaintiff "has not plausibly alleged an underlying constitutional violation, [her] *Monell* claims against the municipal defendants necessarily fail." *Edwards v. Cnty. of Nassau*, No. 21-CV-1670 (PKC) (SIL), 2022 WL 939652, at *14 (E.D.N.Y. Mar. 29, 2022) (citations and quotations omitted). As noted, Plaintiff does not adequately plead any constitutional violations. Thus, her *Monell* claims against the Municipal Defendants necessarily fail and Defendants' motion for summary judgment is granted as to this claim. *Id.*

### V. State Law Claims

In light of the dismissal of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over her state law claims and dismisses them without prejudice to refiling in state court. *See Greenport Gardens, LLC v. Vill. of Greenport*, No. 19-CV-2330 (PKC)

9

(ARL), 2021 WL 4480551, at *19 (E.D.N.Y. Sept. 30, 2021) (declining to exercise supplemental jurisdiction over state claims against "parties not involved in the remaining federal action").

## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is granted in full and this case is dismissed. The Clerk of Court is respectfully directed to enter judgment accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2022
        Brooklyn, New York